UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JASON ENDRESS, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT |
| HARRIS & HARRIS, LTD., | JURY TRIAL DEMANDED |
| Defendant. | |

### COMPLAINT

**NOW COMES** Jason Endress ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining of Harris & Harris, Ltd., ("Defendant") as follows:

#### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227.

#### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Indiana, and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Indiana.

#### PARTIES

4. Plaintiff is a natural person over 18-years-of-age who is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

1

5.  Defendant is a debt collector with its principal place of business located at 111 West Jackson Boulevard, Suite 400, Chicago, Illinois. The principal purpose of Defendant's business is the collection of consumer debts. Defendant collects or attempts to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Indiana.

### FACTS SUPPORTING CAUSES OF ACTION

6.  In 2011, Plaintiff incurred medical debts in the approximate amount of $2,100.00 ("subject debts").

7.  At the time Plaintiff incurred the subject debts, Plaintiff provided his former cellular phone number ending in 1119.

8.  Subsequently thereafter, Plaintiff defaulted on the subject debts because Plaintiff was unemployed and was forced to cope with extreme medical conditions.

9.  In early 2015, the subject debts were sold or transferred to Defendant for collections while Plaintiff was in default.

10. As soon as the subject debts were transferred to Defendant, Defendant began placing collection calls to Plaintiff's cellular telephone number ending in 1119.

11. In July 2016, Plaintiff changed his cellular number to (765) XXX-5784.

12. Plaintiff *never* provided this cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.

13. Upon information and belief, Defendant obtained Plaintiff's cellular telephone number through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

14. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone ending in 5784. Plaintiff is and always has been financially responsible for his cellular phone and its services.

15. In July 2017, Plaintiff answered at least 3 phone calls to his cellular telephone from representatives of Defendant in which they demanded Plaintiff to make a payment on the subject debts. In each call, Plaintiff responded by requesting that Defendant cease placing calls to his cellular telephone and to send all further requests in writing.

16. On September 7, 2017, Plaintiff received another 2 calls from Defendant. Plaintiff immediately returned the call to Defendant and stated: "I am revoking consent for you to call me." No less than 10 minutes later, Defendant placed another call to Plaintiff's cellular phone.

17. Plaintiff answered no less than 7 calls from Defendant, and in each answered call, demanded that Defendant cease its calls to Plaintiff's cellular telephone.

18. Notwithstanding Plaintiff's numerous requests that Defendant's collection calls cease, Defendant placed or caused to be placed an average of 2 phone calls per day between July 2016 through the present day, in an attempt to collect on the subject debts.

19. Plaintiff's demands that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign.

20. In total, Defendant placed or caused to be placed no less than 119 harassing phone calls to Plaintiff's cellular telephone from July 2016 through the present day, with calls taking place several times in one day, up to 3 times per day, and on back to back days.

21. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

22. Specifically, there would be an approximate 2 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

23. Moreover, Plaintiff also heard what sounds to be call center noise in the background of Defendant's phone calls.

24. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using a predictive dialing system, an automated telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts.

## DAMAGES

25. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

26. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

27. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

28. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

29. Plaintiff restates and realleges paragraphs 1 through 28 as though fully set forth herein.

30. Defendant placed or caused to be placed numerous non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

31. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

32. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff's cellular telephone.

33. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

34. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

35. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

36. Defendant violated the TCPA by placing no less than 119 harassing phone calls to Plaintiff's cellular telephone from July 2016 through the present day, using an ATDS without his prior consent.

37. Upon information and belief, Defendant obtained Plaintiff's cellular number ending in 5784 by skip-tracing it.

38. Any prior consent, if any, was revoked by Plaintiff's numerous verbal revocations. Specifically, Plaintiff verbally revoked consent to be called on his cellular phone on at least 7 separate occasions.

39. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

40. Upon information and belief, Defendant has no system in place to document and archive whether it has prior consent to contact consumers on their cellular phones.

41. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

42. Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

43. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, JASON ENDRESS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

   c. Enjoining Defendant from contacting Plaintiff; and

   d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

44. Plaintiff restates and realleges paragraphs 1 through 28 as though fully set forth herein.

45. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

46. The alleged subject debts are a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

47. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

48. Moreover, Defendant is a "debt collector" because it acquired rights to the subject debts after they were in default. 15 U.S.C. §1692a(6).

49. Defendant used the telephone to attempt to collect the subject debts and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

50. Defendant's communications to Plaintiff were made in connection with the collection of the subject debts.

51. Defendant violated 15 U.S.C. §§1692c(a)(1), d, and d(5), through its unlawful debt collection practices.

### a. Violations of FDCPA § 1692c

52. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop on no less than 7 separate occasions. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over after he demanded that it cease contacting him was harassing and abusive. Even after being told to stop contacting him, Defendant continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff into paying the subject debts.

53. Furthermore, Defendant has relentlessly called Plaintiff on no less than 119 occasions in the course of one year without his prior consent. This volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing him into submission.

54. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient, unwanted, and distressing to him.

### b. Violations of FDCPA § 1692d

55. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone without his prior consent seeking immediate payment on the subject debts. Moreover, Defendant continued placing the relentless calls after Plaintiff demanded that the calls cease on no less than 7 separate occasions.

56. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debts with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed no less than 119 harassing phone calls to Plaintiff's cellular telephone from July 2016 through the present day, using an ATDS without his prior consent, with calls taking place several times in one day and on back to back days.

57. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on debts without prior consent through incessant harassing phone calls to the cellular phones of consumers, including Plaintiff.

58. Upon information and belief, Defendant systematically places unsolicited and harassing debt collection calls without prior consent to consumers in Indiana in order to aggressively collect debts allegedly in default to increase its profitability at the consumers' expense.

59. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff JASON ENDRESS respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as the Honorable Court deems just and proper.

**Plaintiff demands trial by jury.**

Dated: September 29, 2017

Respectfully Submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Esq. 6279456
Counsel for Plaintiff
Admitted in the Northern District of Indiana
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com